TOWN OF DELAVAN, a Wisconsin town and Daniel G. Kilkenny, an individual, Plaintiffs-Appellants,

v.

CITY OF DELAVAN, a Wisconsin city, Defendant-Respondent-Petitioner,

LLL PARTNERS and Lake Lawn Airport Corporation, Intervening Defendants-Petitioners.

Supreme Court

*No. 91–1042. Oral argument February 2, 1993.—Decided June 3, 1993.*

(Also reported in 500 N.W.2d 268.)

517

518

520

For the defendant-respondent-petitioner there were briefs by *William F. White, John D. Wilson* and *Michael, Best & Friedrich*, Madison and oral argument by *Mr. White*.

For the intervening defendants-petitioners there was oral argument by *John L. Maier* of *Maier & Associates*, Lake Geneva.

For the plaintiffs-appellants there was a brief by *Michael P. May* and *Boardman, Suhr, Curry & Field*, Madison and *Daniel Kilkenny* and *Wassel, Kilkenny & Danz*, Delavan and oral argument by *Mr. May*.

Amicus Curiae brief was filed by *Claire Silverman* and *Curtis A. Witynski*, Madison for the League of Wisconsin Municipalities.

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals, *Town of Delavan v. City of Delavan*, 168 Wis. 2d 566, 484 N.W.2d 343 (Ct. App. 1992), reversing an order of the circuit court for Walworth County, James L. Carlson, Judge, that upheld a City of Delavan ordinance annexing Lake Lawn Lodge and Airport. In reversing, the court of appeals made two determinations: (1) the annexation was void for lack of contiguity under sec. 66.021(2), Stats.,[1] and (2) the Rule of Prior Precedence

---

[1] Wis. Stats. § 66.021(2) provides in part:

(2) **METHODS OF ANNEXATION**. (intro.) Subject to s. 66.023(7), territory contiguous to any city or village may be annexed . . . .

precluded the filing of any annexation petitions pending final resolution of the already instituted incorporation proceeding. We reject both of these conclusions and therefore reverse the decision of the court of appeals.

This case involves a protracted struggle between the City of Delavan (City) and the Town of Delavan (Town) over competing annexation and incorporation petitions, both of which lay claim to Lake Lawn Lodge and Airport (LLL).[2] On January 19, 1989, Daniel Kilkenny published a Notice of Intent to Circulate a Petition for Incorporation of the Village of Delavan Lake (Village). The Village was to include the same area of land later annexed by the City. Kilkenny and other residents of Delavan Lake filed the petition for incorporation of the Village in circuit court on March 9, 1989. The court held an initial hearing and ruled that the petition fulfilled the physical size and population density requirements as set forth in sec. 66.015, Stats. The circuit court next referred the petition to the Department of Development (DOD) which held three days of public hearings in July, 1989, to ascertain the merits of the proposed incorporation. On November 22, 1989, the DOD issued its determination that the incorporation petition should be dismissed because the territory did not have a reasonably developed community center and was not homogeneous or compact as required under sec. 66.016(1)(a). In consequence of the

---

[2] Lake Lawn Lodge, consisting of 215.1 acres of developed land east of the City, is owned by LLL Partners, an Illinois general partnership. The Airport, consisting of 49.96 acres of land east of the City, is owned by the Lake Lawn Airport Corporation. Anthony Antoniou and his family, of Anvan Development Corporation, have a controlling interest in both properties.

DOD's determination, the circuit court dismissed the incorporation petition on November 29, 1989.[3] On December 1, 1989, Daniel Kilkenny and the Town instituted a chapter 227 review of the DOD's determination.[4]

Meanwhile, the LLL Partners had been filing petitions of annexation for much of the same territory. Although several earlier petitions for annexation had already been filed with respect to other properties, the one with which this appeal is concerned was not insti-

---

[3] Wis. Stats. § 66.014(9)(f) reads:

If the department [DOD] determines that the petition shall be dismissed, the circuit court shall issue an order dismissing the petition. If the department grants the petition the circuit court shall order an incorporation referendum as provided in s. 66.018.

[4] Wis. Stats. § 66.017 provides:

(1) The order of the circuit court made under s. 66.014(8) or (9)(f) may be appealed to the court of appeals.

(2) The decision of the department [DOD] made under s. 66.014(9) shall be subject to judicial review under ch. 227.

(3) Where a proceeding for judicial review is commenced under sub. (2), appeal under sub. (1) may not be taken and the time in which the appeal may be taken does not commence to run until judgment is entered in the proceeding for judicial review.

(4) Where an incorporation referendum has been ordered by the circuit court under s. 66.014(9)(f), the referendum shall not be stayed pending the outcome of further litigation, unless the court of appeals or the supreme court, upon appeal or upon the filing of an original action in supreme court, concludes that a strong probability exists that the order of the circuit court or the decision of the department will be set aside.

Review of the DOD's determination and subsequent dismissal of the incorporation proceeding has not yet reached final resolution. An appeal currently is pending (in the Court of Appeals) from a judgment of the circuit court for Walworth county, John R. Race, Judge, which affirmed the DOD's denial of contested case status. See In re Incorporation of Lands Comprising the Delavan Lake Sanitary District, Case No. 92–3248.

tuted until November 23, 1989, when LLL Partners filed a Notice of Intent to Circulate a Petition for Direct Annexation of LLL and Airport properties to the City.[5] The petitioners drew the proposed annexation so as to connect the southwestern-most tip of their property on Lake Delavan with the southeastern-most tip, thereby creating a semi-circle of territory encompassing all of the LLL lakeshore property and part of the lake. Lake Delavan was dry and undergoing rehabilitation at the time their petition was filed so the petitioners were unaware that the proposed annexation included a 1.5 acre piece of land at the tip of a newly created rubble barrier which jutted into the lake just opposite the Lodge. The DOD supported the proposed annexation on the ground that the shape of the territory was not unusual and the property was homogeneous with the City. On December 19, 1989, the City passed Annexation Ordinance No. C–546 annexing the Lodge and Airport properties to the City.

The Town immediately challenged the annexation ordinance on the following grounds: (1) existence of a prior pending incorporation petition; (2) lack of contiguity with respect to the 1.5 acre tip of the barrier peninsula; (3) improper inducements to the LLL Partnership on the part of the City; and (4) violation of the Rule of Reason. The Town also moved for a preliminary injunction to stay the effectiveness of both the ordinance and the DOD determination pending trial. On

---

[5] In addition to the Lodge and Airport, Anvan Development Corporation was involved in requests for direct annexation to the City for two additional properties: Lake Lawn Farms, consisting of 409.06 acres of undeveloped land southeast of the City; and Geneva Lakes Kennel Club, consisting of 317.4 acres of land east of I–43 which was annexed to the City in June, 1988.

January 22, 1990, following evidentiary hearings, the circuit court denied the Town's motion for preliminary injunction. The court then granted the City's pending motion for summary judgment on the issues of lack of contiguity and Rule of Prior Precedence and denied the City's motion for summary judgment on the question of improper inducement and the Rule of Reason. The City moved for reconsideration on the latter issues and, on July 9, 1990, the circuit court granted summary judgment for the City on the improper inducement count. After a full trial on the final remaining count challenging the annexation as a violation of the Rule of Reason, the circuit court decided that issue in favor of the City.

Except for the claim of improper inducement, the Town appealed from all of the grounds for the circuit court's granting of summary judgment. The court of appeals reversed on two of the three issues raised, concluding that the annexation ordinance was invalid because it included noncontiguous property and further, that the Rule of Prior Precedence precluded the City's annexation from proceeding until the final judgment had been entered with respect to the proposed incorporation. Finding the annexation to be void, the court of appeals did not address the circuit court's ruling with respect to the Rule of Reason. We have accepted the City's petition for review.

In reviewing the decision of the court of appeals, this court must first determine whether the annexation of Lake Lawn Lodge and Airport by the City of Delavan is void under either of two theories: the Rule of Prior Precedence or the statutory requirement of contiguity. Both theories require this court to decide questions of law without deference to the decisions of the court of appeals and circuit court. In addition, because we conclude that the annexation proceeding is

not void we must consider further whether the annexation is voidable under the Rule of Reason. As to this question, we defer to the decision of the circuit court and conclude that the court properly exercised its discretion in finding that the annexation satisfied the Rule of Reason.

As did the court of appeals, we begin with a discussion of whether the annexed territory satisfied the requirement of contiguity set forth in sec. 66.021(2), Stats. The term "contiguous" is not statutorily defined and a substantial amount of case law has arisen with respect to the term's meaning and application. Although finding a single, precise definition of "contiguous" is difficult, one may discern a trend in Wisconsin's courts to require at minimum some significant degree of physical contact between the properties in question. *See, e.g., City of Waukesha v. Salbashian,* 128 Wis. 2d 334, 352 n.5, 382 N.W.2d 52 (1986); *Town of Waukechon v. City of Shawano,* 53 Wis. 2d 593, 597, 193 N.W.2d 661 (1972). *Cf. Ocean Beach Heights v. Brown-Crummer Inv. Co.,* 302 U.S. 614 (1938).

The City urges this court to adopt a broader definition of "contiguous" that includes territory near to, but not actually touching, the annexing municipality. The City notes that this court previously has expanded the term "contiguous" to allow annexation although a public highway separates otherwise contiguous lands. *See Town of Lyons v. Lake Geneva,* 56 Wis. 2d 331, 335–36, 202 N.W.2d 228 (1972). So too, it is argued, the 400 feet of water separating the peninsula from LLL should be construed as a "navigable highway" and therefore "treated with neutrality in annexation proceedings." City of Delavan Brief-in-Chief at 27 (citing *Wisconsin*

*Constitution*, art. IX, sec. 1; *International Paper Co. v. City of Fond du Lac*, 50 Wis. 2d 529, 184 N.W.2d 834 (1971)). We are not persuaded by the City's arguments on this point. Not only is a 400 foot stretch of water significantly wider than the 23 foot public road at issue in *Town of Lyons*, but we also conclude that we should not so expand the definition of "contiguous" as to place distant lakeshore property owners at risk of being annexed by neighboring municipalities.

■

Alternatively, the City argues that because the lake was dry at the time the annexation petition was filed this court should find that the peninsula was in fact contiguous to the LLL properties. *See Town of Greenfield v. City of Milwaukee*, 272 Wis. 610, 613, 76 N.W.2d 320 (1956) ("validity of the petition must be determined as of the date it is filed"). In so arguing, however, the City ignores the circumstances surrounding the lake rehabilitation project. It is undisputed that both parties were actively involved in the project and that both understood the dry lake bed to be temporary in nature.[6] Adopting the City's hypertechnical approach might discourage municipalities from under-

---

[6] On May 1, 1989, the Town and the City entered into an "Agreement for Operation and Funding of the Delavan Lake Rehabilitation Project" to settle disputes that might arise over the Lake Project from the contemplated annexation and incorporation proceedings. In addition to setting forth the parties' respective financial responsibilities, the Agreement incorporated a 1989 Department of Natural Resources environmental impact statement that describes in detail the different components of the rehabilitation project. According to this report, the drawing down of Delavan Lake and the construction on the "Barrier peninsula" was to begin in September of 1989; and the lake raised to normal level in the spring of 1990.

taking vital engineering projects out of fear that even a temporary alteration in the territory's geography would open the door for annexation.

■

The City argues that refusing to find the peninsula and LLL properties contiguous effectively precludes all annexation of property across water and conflicts with prior case law upholding a city's right to annex portions of a contiguous lake. *See, e.g., In re Village of Oconomowoc Lake*, 264 Wis. 540, 544, 59 N.W.2d 662 (1953); *Fenton v. Ryan*, 140 Wis. 353, 359–60, 122 N.W.2d 756 (1909). We reject the City's attempt to characterize a lake and its surrounding shoreline as one contiguous territory and remind the City that no one has challenged its right to annex the LLL properties and lakeshore. The instant dispute involves the right to annex unattached land, i.e., the peninsula extending into the lake, not the right to annex portions of the lake itself.

■

Because we conclude that the peninsula is not contiguous to the LLL properties, we nonetheless find that the principle of *de minimis* and the unique facts of this particular case render the trivial lack of contiguity insufficient to void the annexation. The record is not clear as to the exact moment when the peninsula intruded into the proposed annexation. It would be senseless to expend the energy and time needed to reconstruct the evolution of the peninsula and its exact size as of November 23, 1989, when the annexation petition was filed.[7] Moreover, as noted above, any

---

[7] According to the record, we know that the Department of Natural Resources estimated that the peninsula rehabilitation would occur sometime between September and February of 1989–90; and at oral argument the City asserted that the penin-

hypertechnical application of the requirement for contiguity would be contrary to the public interest. Accordingly, insofar as the land in dispute is a one and a half acre strip of uninhabited land at the tip of a "Barrier Peninsula" and comprises a tiny fraction of the total annexation, we conclude that the lack of contiguity in respect to this navigational jetty designed to control water currents is a trivial matter with which we shall not be concerned.[8]

The parties involved in this dispute predict legal anarchy will ensue from our determination on this matter. According to the City, finding the peninsula to be noncontiguous will cause confusion and permit objectors to frustrate annexation proceedings throughout the state by arguing that "incidental waterways" are sufficient to break contiguity. To the contrary, the Town believes that finding the peninsula to be contiguous would spell disaster for small lakeshore communities throughout the state. Neither prospect, however, adequately considers the additional protections afforded targets and proponents of annexation alike, by the Rule of Reason which we discuss *infra*. For example, we do not believe that Delavan Lake can reasonably be characterized as an "incidental waterway,"

---

sula was 80 percent completed as of January 31, 1990. Having concluded that the 1.5 acres is a trivial matter, however, we reject any attempt to define "contiguity" in terms of percentages. Today's holding would stand even if the rehabilitation of the peninsula had been completed as of the time of filing the annexation petition.

[8] Annexation Ordinance No. C–546 calculates the total territory annexed at 265.055 acres, which figure does not include the substantial lake area that was also included in the annexed territory.

akin to a drainage ditch or creek. The Rule of Reason similarly protects across Lake Winnebago towns such as Stockbridge from an annexing city like Oshkosh.[9] We thus conclude that insofar as our decision to affirm the Lake Lawn Lodge and Airport annexation despite the trivial noncontiguity of the intruding barrier is limited to the unique facts of this case, the holding carries no precedential weight for future such disputes—except for the already well recognized *de minimis* doctrine rationale which applies to all court decisions.

We next turn our attention to whether the City's annexation is void for having been commenced prior to the final resolution of the Town's prior incorporation proceeding. The so-called Rule of Prior Precedence is of common law origin and was created to ensure that "the proceedings first instituted have precedence." *In re Village of St. Francis*, 208 Wis. 431, 436, 243 N.W. 315 (1932). Here, the court of appeals construed the Rule of Prior Precedence to require final resolution of the pending incorporation before the annexation proceeding could be initiated. In support of this rule of "complete finality," the court of appeals noted that Wisconsin courts previously had rejected the "stand in line" theory of precedence in which two proceedings mirror each other's progress—the second proceeding stepping in if the prior proceeding at any point is found void. *Village of St. Francis*, 208 Wis. at 431; *Town of Greenfield v. Milwaukee*, 259 Wis. 77, 47 N.W.2d 292

---

[9] In its opinion, the court of appeals noted that permitting the City of Delavan to annex the noncontiguous peninsula "might raise eyebrows and hackles in the Town of Stockbridge, directly across Lake Winnebago from the City of Oshkosh." *Town of Delavan*, 168 Wis. 2d at 572.

(1950); *Village of Brown Deer v. Milwaukee*, 274 Wis. 50, 79 N.W.2d 340 (1956).

It is well established that the date a proceeding is instituted is the date on which the earliest statutory requirement is undertaken. *See Town of Greenfield*, 259 Wis. at 82–3; *Village of Brown Deer*, 274 Wis. at 58. The parties do not dispute that the incorporation proceeding, which commenced on January 19, 1989, when Daniel Kilkenny circulated the Notice of Intent to Circulate a Petition for Incorporation of the Village of Delavan Lake as required under sec. 66.014(1), originated prior to the annexation proceeding, which commenced on November 23, 1989, when LLL Partners filed the Notice of Intent to Circulate a Petition for Direct Annexation of LLL and Airport properties to the City.

The question for this court is to determine when an incorporation's priority status terminates so as to permit the commencement of an annexation proceeding. In contrast to the court of appeals' rule of "complete finality," the circuit court concluded that pursuant to sec. 66.014(9)(f), the *de facto* dismissal of the incorporation petition occurred when the DOD issued its recommendation on November 22, 1989. We agree with the circuit court's functional interpretation of the Rule of Prior Precedence and hold that the circuit court's remaining ministerial duties following the DOD's sec. 66.014(9)(f) determination do not block the commencement of a rival annexation proceeding.[10]

---

[10] Today's holding is consistent with our decision in *In re: Petition of Township of Campbell*, in which we held that the issuance of the DOD's determination terminated the incorporation proceeding and triggered the time limits set forth in sec. 66.014(9)(h) for the filing of a subsequent incorporation peti-

Although *Village of St. Francis* involved a prior annexation and subsequent incorporation proceeding, the Town asserts that its rationale is equally applicable in the instant dispute. The DOD's determination might be overturned on review and the incorporation proceeding reinstated, therefore, the Town argues, permitting the annexation proceeding to continue is unwise and contrary to the reasoning in *Village of St. Francis*. While we do not disagree with the Town's characterization of the holding in *Village of St. Francis*, we believe that it overlooks the curative effect of legislation, i.e. sec. 66.03(13), enacted subsequent to *St. Francis*, that ameliorates and eventually cures the alleged deleterious consequences of tandem and conflicting proceedings. *See infra* note 11.

The St. Francis court specifically noted in denying the petitioners' request for an interlocutory order that "[t]o permit both incorporation proceedings and the annexation proceedings to go on at the same time would result in doubt, confusion, and be beneficial to no one. One proceeding ought not to be used to defeat the other . . . ." *Village of St. Francis*, 208 Wis. at 435–36. As the above statement indicates, this court sought to create a rule by which municipalities could minimize the obstacles involved in annexing or incorporating territory; a rule to ensure the smooth dovetailing of multiple proceedings, and to protect against tactical maneuvering designed to foil rival proceedings.

Interpreting the words of the *Village of St. Francis* court literally, the Town argues that the prior incorporation proceeding is not terminated until all of sec. 66.017's review and appeal provisions have been

tion. *See Township of Campbell*, 78 Wis. 2d 246, 254 N.W.2d 241 (1977).

exhausted. We disagree with this literal application of the Rule of Prior Precedence and conclude that it distorts the underlying purpose for the Rule. Our holding in *St. Francis* was intended to protect the integrity of the prior proceeding, not to paralyze the legal process so as to delay subsequent actions years into the future. We believe that the Rule of Prior Precedence would have been better served had the court of appeals in this case focused less on the scope of sec. 66.017 and more on the ultimate likelihood of success of the incorporation proceeding.

■

We do not take issue with the court of appeal's interpretation of sec. 66.017 or the Town's right to file for chapter 227 review of the DOD determination. However, insofar as a negative DOD determination will be reviewed by the court of appeals with great deference we are compelled to note the negligible likelihood that a reversal will occur in the instant dispute. We further note the strong presumption of validity that is accorded a petition for Direct Annexation. *See, e.g., Town of Pleasant Prairie v. City of Kenosha,* 75 Wis. 2d 322, 327, 249 N.W.2d 581 (1977); *Town of Lafayette v. City of Chippewa Falls,* 70 Wis. 2d 610, 618, 235 N.W.2d 435 (1975). On the basis of these factors, we thus conclude that the rule of "complete finality" adopted by the court of appeals unnecessarily restricts the flexible application of the Rule of Prior Precedence.

As an alternative to determining the point at which "complete finality" is achieved under sec. 66.017, the Town urges this court to find that the earliest the annexation could have commenced was after the circuit court entered its order to dismiss the prior incorporation. Under this second test the annexation would be void because the petitioners filed the Notice of Intent to

Circulate a Petition for Direct Annexation six days *before* the circuit court formally entered the order that dismissed the incorporation proceeding. The Town asserts that the circuit court wrongly permitted "the special proceeding for incorporation—pending in the circuit court—[to] be terminated by an administrative order."

We reject the Town's reliance on the circuit court's formal dismissal of the pending incorporation and its disregard for the practical effect of the DOD determination. For this court to adopt the DOD's determination as the termination of the incorporation proceeding does not affect the Town's right under sec. 66.017 to seek review of that determination. The Town's incorporation proceeding continues as an ongoing legal proceeding in spite of the negative DOD recommendation and the DOD determination could still be reversed by the court of appeals. Rather than focus on the legal validity of the incorporation proceeding, our concern is with the practical effect of the DOD determination—*a concern that is entirely separate from the circuit court dismissal.*

The City argues that after the DOD issued its determination the incorporation proceeding was no longer "valid" and therefore not subject to the Rule of Prior Precedence. We find this position equally untenable. As stated above, insofar as the circuit court had not yet formally dismissed the action, the prior incorporation proceeding was still legally viable as of November 23, 1989.[11] Nevertheless, we believe that the incorpo-

---

[11] We reject the City's attempt to liken the instant case to ones in which this court found the proceedings to be invalid because they did not meet statutory requirements. *See In re*

ration no longer warranted judicial protection against competing proceedings once the DOD issued its negative recommendation. The confluence for two competing valid proceedings was effectively extinguished with the DOD's determination on November 22, 1989, thus opening the door for the commencement of the annexation. We therefore conclude that the purely ministerial duties of dismissal of the incorporation petition set forth in sec. 66.014(9)(f) did not preclude the filing of the LLL Partners' Notice six days before the circuit court formally dismissed the prior incorporation proceeding.

Although the Town prophesies confusion in trying to disentangle prematurely annexed lands in the event that the incorporation proceeding ultimately is reversed, the legislature foresaw and dealt with such an eventuality by enacting sec. 66.03(13)(bb), Stats., which sets out apportionment procedures for the dissolution of the subsequent annexation.[12]

---

*Town of Preble*, 261 Wis. 459, 53 N.W.2d 187 (1952) (annexation petition containing insufficient number of signatures); *In re Village of Brown Deer*, 267 Wis. 481, 66 N.W.2d 333 (1954) (city failing to obtain sufficient number of signatures for annexation petition within a reasonable time). While the DOD's role in the incorporation proceeding is statutorily mandated, its determination is based on the substantive merits of the incorporation, not the jurisdictional sufficiency of the proceeding.

[12] Wis. Stats., § 66.03(13) provides in relevant part:

(bb) *Apportionment when court returns territory to former status.* Whenever territory which has been annexed . . . returns to its former status by *reason of a final court determination,* there shall be an apportionment of general property taxes and current aids and shared revenues to adjust such assets between the municipalities, and no other apportionment of assets and liabilities. . . . [T]he apportionment shall insofar as practicable equitably adjust such

We see no need for extending application of the Rule of Prior Precedence to cover situations that have already been granted statutory protection. Similarly, we caution the City that although reversal of the dismissal is unlikely it is legally possible. Annexation petitions filed prior to the final resolution of the prior incorporation proceeding are undertaken solely at the petitioner's risk.

Having concluded that the annexation proceeding is not void for lack of contiguity nor because it commenced in violation of the Rule of Prior Precedence, we must determine whether the annexation is voidable under the Rule of Reason, which was created to assist courts in determining whether a municipality had abused its powers of annexation. *See Town of Pleasant Prairie*, 75 Wis. at 327. Although not addressed by the court of appeals, the circuit court concluded after a four day trial devoted exclusively to this question that the annexation satisfied all three of the Rule's required elements: (1) reasonable boundaries, (2) demonstrable need for the property, and (3) no indication that the City otherwise abused its discretion. Because the Rule of Reason was not addressed by the court of appeals, we treat this portion of the review as an appeal from the circuit court.

The Town challenges only the second element, namely whether the City manifested a "reasonable present and demonstrable future need for the annexation." To succeed, the Town bears the burden of convincing this court that the circuit court's findings

assets between the municipalities involved on the basis of the portion of the calendar year the territory was located in the respective municipalities. (Emphasis supplied.)

are clearly erroneous and "contrary to the great weight and clear preponderance of the evidence." *Town of Waukechon*, 53 Wis. 2d at 596. This is an especially heavy burden in annexation proceedings insofar as the circuit court is directed to be highly deferential to the actions taken by the City in annexing the property. *See City of Beloit v. Town of Beloit*, 47 Wis. 2d 377, 384, 177 N.W.2d 361 (1970) (circuit court review limited to determining whether any facts exist to justify the City's actions).

We conclude that the circuit court's findings of fact in respect to the City's need for the annexation are amply supported by the evidence, we therefore reject the Town's challenge and affirm the decision of the circuit court in this respect. Two factors are helpful in reaching this conclusion. First, the property owners themselves petitioned for direct annexation to the City. Wisconsin courts are particularly sensitive to a property owner's desire to be located in a particular municipality and will incorporate such factors as the applicable zoning ordinances, development goals, and available services into its determination of need. *See generally Town of Pleasant Prairie*, 75 Wis. 2d at 329–330; *Town of Lafayette*, 70 Wis. 2d at 629–30; *Town of Waukesha v. City of Waukesha*, 58 Wis. 2d 525, 533, 206 N.W.2d 585 (1973). Second, passage of the City's ordinance suggests additional reasons for authorizing the annexation. At trial, the City introduced the testimony of several alderpersons to illustrate the specific factors that motivated each to vote in favor of the annexation ordinance. The witnesses noted such factors as the need for continued regulation and development on the City's east side, and

the improved public facilities and services to be offered that part of the City.

The Town challenges the authority of the circuit court to base its finding of "need" on the City's future plans for growth and development. For support the Town cites to this court's holding in *City of Beloit* in which we rejected testimony from a former state Director of Planning on the effect that the proposed annexation would have on the municipality's long-term development interests and instead, stated that "[a] determination of what is convenient or what is best for the area is not a judicial function." *City of Beloit*, 47 Wis. 2d at 390. Likewise, the Town asserts that here the circuit court based its finding of "need" on little more than the City's bare assertion that the annexation would further future development interests.

We are unpersuaded by the Town's arguments on this matter. Whereas in *City of Beloit* the circuit court was left to infer the potential gain to be derived from the annexation, here the City of Delavan itself provided the circuit court with concrete evidence of the ways in which it would benefit from the annexation of the Lake Lawn Lodge and airport. Rather than make a judicial determination whether the annexation would be in the City's future development interest, the circuit court merely reviewed whether the City evidenced an adequate basis for its own finding on the question of future need.

■

The Town itself concedes that evidence of future benefits can be considered in the "overall question of need." *See Town of Pleasant Prairie*, 75 Wis. 2d at 336. Here, we see that in addition to the future benefits derived by the City from the annexation, the circuit court further considered the benefits to be derived by

the owners of LLL properties. Moreover, the circuit court made findings of fact with respect to the "logical and historically demonstrated growth area of the City" and concluded that the annexed properties were "within the current path of development within the City." It was on the basis of these cumulative findings that the circuit court concluded that the City had evidenced an adequate need for the properties to satisfy the Rule of Reason.

We conclude that the Town fails to satisfy its burden of proving that the circuit court could not have found that the City had "any reasonable need" for the annexation. The Town asserts that the circuit court's findings of fact are insufficient as a matter of law to establish the element of need under the Rule of Reason. We disagree. The circuit court made lengthy findings of fact to support its conclusion; findings of fact that we believe easily satisfy the deferential standard of review applied to the City's decision to annex the Lake Lawn Lodge and Airport properties. Under the Rule of Reason the annexation is appropriate.

*By The Court.*—Decision of the court of appeals is reversed.