TOWN OF SUGAR CREEK, a municipal corporation, Plaintiff-Appellant,†

v.

CITY OF ELKHORN, a municipal corporation, Defendant-Respondent,

MANN BROTHERS, INC., Intervening-Defendant-Respondent.

Court of Appeals

*No. 98–2514. Submitted on briefs September 23, 1999.—Decided November 17, 1999.*

(Also reported in 605 N.W.2d 274.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Patrick J. Hudec, Gabrielle Boehm* and *Quentin F. Shafer* of *Hudec Law Offices, S. C.* of East Troy.

On behalf of the defendant-respondent and the intervening-defendant-respondent, the cause was submitted on the briefs of *Michael J. Cieslewicz,* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee and

*David M. Reddy* and *Lowell E. Sweet* of *Sweet & Reddy, S.C.* of Elkhorn.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1.　ANDERSON, J.　The Town of Sugar Creek objects to the direct annexation of a parcel of land by the City of Elkhorn. The Town maintains that the City misused its discretion in adopting the annexation ordinance. The circuit court held that the Town failed to overcome the presumption of validity of the ordinance and the annexation satisfied the "rule of reason." Because the record supports the court's findings that the borders are not arbitrary, that the City has a reasonable need for the parcel, and that the City did not commit any other misuse of its discretion, we affirm.

¶ 2.　This is a review of a direct annexation initiated under § 66.021(2), STATS. The Town of Sugar Creek brought this action to test the validity of the City of Elkhorn's annexation ordinance detaching 371 acres of land from the Town and attaching it to the City. The annexation was by petition initiated by Mann Brothers, Inc., a road construction firm with facilities located on 40 acres of the annexed land. All of the landowners in the annexed area signed the petition and the City's council adopted an ordinance annexing the land to the City. In the circuit court, the Town initially raised statutory, procedural and technical defects along with its claim that the annexation violated the "rule of reason." In a well-reasoned opinion, the court rejected all of the Town's challenges.

¶ 3.　In this appeal, the Town contends that the boundaries are arbitrary and irregular. The Town also complains that the annexation violates the "need" prong of the rule of reason and that the circuit court

476

erred in relying upon the "zone of economic interest" theory propounded by the City. Finally, it maintains that the City improperly induced the annexation by promising to create a Tax Incremental Financing (TIF) District to absorb the cost of extending sewer service to the newly annexed land.

■

¶ 4. The Town bears the burden of convincing this court that the circuit court's findings are clearly erroneous and contrary to the great weight and clear preponderance of the evidence. *See Town of Delavan v. City of Delavan*, 176 Wis. 2d 516, 538–39, 500 N.W.2d 268, 276 (1993). There are several reasons for imposing such a heavy burden upon the Town. First, an annexation ordinance, like all legislative enactments, enjoys a presumption of validity. *See Town of Pleasant Prairie v. City of Kenosha*, 75 Wis. 2d 322, 327, 249 N.W.2d 581, 585 (1977). Second, whether the annexation is in the best interests of the parties or the public is inherently a legislative matter and reviewing courts cannot second-guess the legislative wisdom of an annexation. *See Town of Menasha v. City of Menasha*, 170 Wis. 2d 181, 188, 488 N.W.2d 104, 108 (Ct. App. 1992). Third, the courts cannot disturb this legislative determination unless it appears that it is arbitrary and capricious or a misuse of discretion. *See Town of Pleasant Prairie*, 75 Wis. 2d at 328, 249 N.W.2d at 585.

■

¶ 5. Judicial review is limited to deciding whether an annexation satisfies the three prongs of the "rule of reason." *See City of Beloit v. Town of Beloit*, 47 Wis. 2d 377, 384, 177 N.W.2d 361, 366 (1970). The prongs are (1) that no arbitrary exclusions or irregularities appear in the boundary lines, (2) that some reasonable present or demonstrable future need exists

for the property, and (3) that the municipality commits no other misuse of discretion in the process. *See Town of Menasha*, 170 Wis. 2d at 189, 488 N.W.2d at 108. Failure to satisfy any one of these prongs renders the annexation arbitrary and capricious and invalid. *See Town of Lafayette v. City of Chippewa Falls*, 70 Wis. 2d 610, 625, 235 N.W.2d 435, 443 (1975). All three prongs require factual inquiries to be made by the circuit court. *See Town of Menasha*, 170 Wis. 2d at 189–90, 488 N.W.2d at 108. We will not reverse factual findings by a circuit court unless such findings are clearly erroneous. *See id.* at 190, 488 N.W.2d at 108. However, whether the annexing authority acted arbitrarily and capriciously requires the application of established facts to a legal standard. This ultimate determination raises a question of law, and we are not required to defer to the circuit court's conclusion. *See id.*

## First Prong—Boundary Lines

¶ 6.    The Town argues that the boundaries of the annexed parcel are irregular and there was no attempt to annex by boundary lines that would be deemed homogeneous relative to the City's boundaries. The Town points out that the parcel is not the classic shape for annexation but is shaped more like a finger. The Town argues that because the boundaries create a crazy-quilt boundary along the City's northern border, the first prong of the "rule of reason" is violated.

¶ 7.    The circuit court found that the Town failed to carry its burden of proving that there were irregularities in the boundary lines. The court summarized the testimony of two witnesses who it characterized as reliable. The first was George E. Hall, Director of Municipal Boundary Review with the Wisconsin Department of Administration, who testified that the

478

parcel was not irregularly shaped.[1] Hall explained to the court that homogeneity in shape requires looking beyond mere physical boundaries and considering the economic uses proposed for the parcel as to the adjoining city land. The second witness was Professor Lawrence P. Witzling who related that the parcel conformed to the normal, customary and usual shape for annexations.

¶ 8. We cannot improve upon the circuit court's conclusion that because the City did not initiate the annexation it is left to the discretion of the petitioning landowners to determine the boundaries of the parcel. As the supreme court has noted, "[W]here direct annexation proceedings are initiated by property owners, the general rule is that the annexing municipality is not to be charged with arbitrary action in the drawing of boundary lines." *Town of Pleasant Prairie*, 75 Wis. 2d at 339, 249 N.W.2d at 591.

### Second Prong—Reasonable Need

¶ 9. The Town's principal attack is directed to the circuit court's findings that the City had demonstrated a reasonable need for the land. The Town contends that there is no "growth overflowing the City's existing boundaries"; in fact, there is enough vacant land within

---

[1] Notice of the annexation and a scale map of the area were sent to George E. Hall, Director of Municipal Boundary Review, Department of Administration, as required by § 66.021(11), STATS. After review, he issued a finding that the proposed annexation was not against the public interest. The supreme court has indicated that the absence of a finding that annexation is against the public interest may be considered as evidence in favor of the annexation. *See Town of Mount Pleasant v. City of Racine*, 28 Wis. 2d 519, 527, 137 N.W.2d 656, 661–62 (1965).

479

the City's boundaries to fulfill its needs for more than twenty years. In addition, the Town portrays the annexed parcel as not needing city services because it was not undergoing rapid development.

¶ 10.   The Town argues that the circuit court erred when it accepted the testimony of Witzling describing an economic impact theory which justifies the annexation. The Town characterizes the theory as not being approved under the "rule of reason" and being nothing more than broad policy objectives. Finally, the Town maintains that the potential benefits to the annexed parcel cannot be the sole determinative factor and the court erred because it based its findings on the petitioners' need for sewer and water services.

¶ 11.   The circuit court found that the extension of sewer and water services to the annexed parcel was a benefit to the land and assisted in establishing a demonstrable need. The court reasoned that the Town's inaction in planning for a sanitary district created a hazardous situation for landowners whose septic systems might fail and that the extension of city services alleviated the risk to the landowners of failing septic systems. The court did adopt the testimony of Witzling when it concluded that the City had a need for the parcel in order to maintain its economic and social well-being. The court explained that the employment opportunities represented by the businesses operating on the annexed land supported the City's economic activities.

¶ 12.   Witzling is a professor of architecture at the School of Architecture in Urban Planning at the University of Wisconsin–Milwaukee and an urban planning consultant. He opined that the present and future economic activity in the annexed parcel were important to the economic health of the City.

480

[C]ities have a need and in a sense they also have an obligation to their residents to enhance and protect the economic growth and social well-being of the community, and that economic well-being in particular rests on the economic base, activities in the communities. By economic base, we're talking about the basic industries and manufacturing institutions that bring jobs and economic money into the committee [sic]. In this case we have really two situations reverting economic base. We have both the existing economic base represented by the Mann Brothers and other ongoing business. We also have the potential for additional economic base activities that's implied by the likely expansion of economic activity along the [state trunk highways] 12–67 aerial [sic]. . . .

This is fairly well-known in the area but when you have an economic base activity, it helps the community in several ways. It's not just the taxes that it pays, it's the, ah, salaries and wages it pays to it's employees that support local businesses. It's the direct transfer of funds to other businesses in the area that they may use and the multiplier of all of those effects. So from the standpoint of the City's need to protect their current and future economic needs, the annexation is needed. It's also needed not just for the existing activities, but for the potential future activities along, ah, that highway corridor.

¶ 13.   Witzling concluded that the City had to prepare for the northward expansion of growth from Illinois, which is planned to include metro lines into Walworth county. He foresaw future economic activity along the Highways 12 and 67 corridor as traffic increased from the growth coming from Illinois. He testified that a city needs "to create . . . a development

pattern that's rational and reasonable given that level of economic growth that's going to occur."

¶ 14. As the challenger of the annexation, the Town had the burden of showing that there was no reasonable need for the annexed parcel. *See City of Beloit*, 47 Wis. 2d at 385, 177 N.W.2d at 366. Although the Town did present expert testimony that the City did not have a demonstrable need for the parcel, the court chose to accept the testimony of Witzling as being more credible and reasonable. *See Town of Waukechon v. City of Shawano,* 53 Wis. 2d 593, 599, 193 N.W.2d 661, 664 (1972). We find no reason to quarrel with the circuit court's findings.

¶ 15. Generally, prior annexation cases have identified several factors that should be considered when determining whether the need requirement has been met: "(1) A substantial increase in population; (2) a need for additional area for construction of homes, mercantile, manufacturing or industrial establishments; (3) a need for additional land area to accommodate the present or reasonably anticipated future growth of the municipality; . . . (4) the extension of police, fire, sanitary protection or other municipal services to substantial numbers of residents of adjacent areas"; (5) . . . "an attempt to eliminate a possible pollution problem"; and (6) "[the expansion of] residential areas in the vicinity of schools." *Town of Lafayette*, 70 Wis. 2d at 626, 235 N.W.2d at 443–44. The Town's argument that Witzling's "zone of economic interest" theory is not approved as a test for what is a reasonable need presupposes that this list is all-inclusive. We find nothing in prior decisions that requires the law to remain static or prevents it from adopting new or novel ideas.

482

¶ 16. The need requirement "serves a useful purpose in furthering the public policy favoring orderly growth of urban areas by preventing irrational 'gobbling up of territory.' " *Id.* at 629, 235 N.W.2d 445. When a municipality initiates the annexation proceeding, the factors deemed relevant to establishing need must be scrutinized. *See id.* But, where the property owners initiate the annexation proceeding, the courts must be responsive to their desires to be located in a particular municipality. *See Town of Delavan*, 176 Wis. 2d at 539, 500 N.W.2d at 276. In these cases of direct annexation, the court should incorporate "such factors as the applicable zoning ordinances, development goals, and available services into its determination of need." *Id.*

¶ 17. We conclude that Witzling's "zone of economic interest" theory strengthens several of the factors that are relevant to the question of reasonable need. These factors include future benefits to the city, *see id.* at 540, 500 N.W.2d at 277; the necessity for sensible and systematic plans for urban development; the need for more land to accommodate present and future industrial, commercial or residential construction, *see Town of Pleasant Prairie*, 75 Wis. 2d at 335–36, 249 N.W.2d at 589; and, goals for the development of the annexed parcel, *see Town of Delavan*, 176 Wis. 2d at 539–40, 500 N.W.2d at 276–77. Contrary to the Town's assertion that the testimony of Witzling only established that the parcel was desirable to the City, we are satisfied that his testimony showed the City's need for the land to accommodate the projected growth along the arterial highways in the parcel.

¶ 18. Another reasonable need is the avoidance of pollution problems that could result from reliance on septic tanks in the annexed parcel. *See Town of*

*Waukechon*, 53 Wis. 2d at 599, 193 N.W.2d at 664. The Town chairman testified that there was no sewer service within its boundaries and the Town has no engineering or financial planning underway to provide sewer service in the annexed parcel. In fact, the chairman stated that the Town would take no action until septic systems began to fail. Richard Mann, one of the organizers of the annexation petition, testified that his company was presently out of septic system capacity and could not expand without the benefit of city sewer and water. The Walworth county sanitation manager testified that the soils in the annexed parcel could not support a conventional in-ground septic system. As the circuit court correctly pointed out, the Town's laissez-faire attitude about sewer service created a hazardous situation for the petitioners and all of the Town's residents.

¶ 19. The circuit court's findings on the need requirement are amply supported by the evidence. We therefore reject the Town's contention that the City failed to demonstrate a reasonable need for the annexed parcel.

### Third Prong—Other Arbitrary Conduct

¶ 20. The rule of reason also requires that no other factors exist which would constitute a misuse of discretion. *See Town of Waukesha v. City of Waukesha*, 58 Wis. 2d 525, 533, 206 N.W.2d 585, 589 (1973). The Town asserts that the City misused its discretion by promising to establish a TIF District to finance the $8.3 million cost of extending sewer service to the property owners in the annexed parcel. The Town theorizes, "The property owners' development plans depend on sewers, the sewers depend on the TIF and the TIF

depends on the annexation. Based on the interrelationship of these components it is clear that the City used the proposed TIF to induce the property owners to seek annexation."

¶ 21. The circuit court rejected this challenge. The court held that the Town failed to offer any proof to back up its allegation that the City misused its power by making an offer the property owners could not refuse.

¶ 22. Speculative characterizations such as the one advanced by the Town cannot serve to overcome the presumed validity of the annexation ordinance. *See Town of Pleasant Prairie*, 75 Wis. 2d at 332, 249 N.W.2d at 587. Further, we concur completely with the circuit court's reliance upon *Town of Hallie v. City of Chippewa Falls*, 105 Wis. 2d 533, 542, 314 N.W.2d 321, 326 (1982), for the proposition that municipalities are permitted to condition extension of sewer services upon annexation.

¶ 23. The desire to develop one's land to its highest and best use is legitimate, and the supreme court has stated that property owners may seek annexation in pursuit of their own perceived best interests. *See Town of Pleasant Prairie*, 75 Wis. 2d at 329, 249 N.W.2d at 586. We hold that a direct annexation not otherwise in conflict with the rule of reason is not invalidated because the petitioners are motivated by a desire to obtain city sewer and water services.

### Conclusion

¶ 24. As the challenger of the annexation, the Town has failed to present evidence to support its assertion that the annexation was arbitrary and capri-

cious. The evidence supports the circuit court's findings that the borders are not arbitrary, the City has a reasonable need for the parcel and there are no other misuses of discretion.

*By the Court.*—Judgment affirmed.